**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:** : | |
| : | |
| **MIGUEL ANGEL CATALA MORALES** : | **Case No. 03-12453-ESL** |
| : | **Chapter 13** |
| **Debtor.** : | |
| : | |
| _____ : | |
| : | |
| **MIGUEL ANGEL CATALA MORALES** : | |
| : | |
| **Plaintiff** : | **Adv. Proc. No. 07-34** |
| : | |
| **v.** : | |
| : | |
| **CONSEJO DE TITULARES DEL COND.** : | |
| **BOULEVARD DEL RIO II, ET ALS** : | |
| : | |
| **Defendants** : | |
| _____ : | |

**OPINION AND ORDER**

This adversary proceeding is before the court on the motion for summary judgment filed by Consejo De Titulares Del Condominio Boulevard Del Rio II (the "Defendant") on July 9, 2007. (Dkt. 15)[1] ("Defendant's Motion"). Miguel Angel Catala Morales (the "Plaintiff" or "Debtor"), filed an opposition to Defendant's Motion and a cross-motion for partial summary judgment on October 29, 2007. (Dkt. 37) ("Plaintiff's Cross-Motion"). On November 27, 2007, the Defendant filed its reply in opposition to Plaintiff's Cross-Motion for summary judgment. (Dkt. 44) ("Defendant's Reply"). Plaintiff was granted leave to file a reply to Defendant's opposition to Plaintiff's Cross-Motion, which was filed on January 28, 2008. (Dkt. 50) ("Plaintiff's Reply"). The parties submitted their opposing statements of uncontested facts and

_____

[1] Matters in the docket of the case will be referred to as "Dkt.__".

responses thereto, as required under Local Rule 56. (Dkt. 15, 38 & 44).[2] ("Plaintiff's Facts" and "Defendant's Facts"). The Plaintiff's Cross-Motion seeks to impose liability on Defendant for willful violation of the automatic stay provisions in 11 U.S.C. § 362 of the Bankruptcy Code (the "Code"). For the reasons set forth below, Defendant's Motion is hereby denied and Plaintiff's Cross-Motion for partial summary judgment is hereby granted.

***Factual Background***

Debtor filed a chapter 13 petition on November 10, 2003 and the instant action on March 5, 2007.[3] The Defendant was listed as a creditor in the petition schedules under the name of its previous management company and duly authorized administrator as follows: McDougall Management, Condominio Boulevard Del Rio II, 500 Avenida Los Filtros, Apt. 85, Guaynabo, P.R. 00971-0228. (Dkt. 1 ¶ 8-9; Dkt. 15 Defendant's Facts ¶ 3).[4] Defendant's current management company is American Management Maintenance Corp. ("AMMC"). The Defendant's current administrator is Francisco Pagan Colon. ("Mr. Pagan").[5] (Dkt. 15

---

[2] References to the parties' reply briefs will be to "Dkt. _ Plaintiff's Reply" and "Dkt. _ Defendant's Reply". References to the parties' opposing statements of uncontested facts shall be to "Dkt. _ Plaintiff Facts" and "Dkt. _ Defendant's Facts", followed by the paragraph and/or page number. References to the single exhibit filed by Plaintiff will also say "Exhibit at 0000__"; references to Defendants' exhibits will say "Exh.__".

[3] Debtor filed a plan and a post-confirmation modification which has been confirmed and is currently in compliance.

[4] For purposes of this decision, the acts of any management company, administrator, attorney or employee of Defendant's managers named in the pleadings, that was acting pursuant to authority granted by Defendant, will be treated as if the acts were committed by, or the person is, the Defendant itself. Defendant has not disclaimed liability for the acts of these agents, as well it can't since it is settled law that Defendant is bound by, and is liable for, the acts of its agents. *See, In re Michaud*, 2007 WL 135902 (Bkrtcy.D.N.H. 2007); *In re McCormack*, 2003 B.R. 521 (Bkrtcy.D.N.H. 1996). There is no dispute that Defendant has the authority to appoint and/or employ the agents identified in the pleadings to conduct its business, or that Defendant has standing to sue and be sued on behalf of the Condominium. (Dkt. 15 Motion ¶¶ 2-4, 8; Dkt 44 Defendant's Facts, Exh. 9 (By-laws, art. 30 et. seq.)).

[5] Defendant's administrator, Mr. Pagan, is the owner of Defendant's current management company, AMMC. He has been involved with Defendant's management since late 2004, when he was employed by Caribbean Housing Management Services, Inc. ("Carribean Management"), Defendant's previous manager. (Dkt. 44 Defendant's Facts ¶ 43, Exh. 13 at 1).

- 2 -

Defendant's Facts ¶ 4). After McDougall Management's tenure but before AMMC's current tenure, Defendant's management company was Carribean Management. Defendant is listed in the petition as a secured creditor for $700 dollars in condominium maintenance fees.[6] (the "pre-petition debt") (Dkt. 1 ¶¶ 7-9). The Defendant's accounts show that at the time of the petition, Debtor owed $711 dollars in maintenance fees, and Debtor agrees with that amount. (Dkt 15 Defendant's Facts ¶ 6, Exh. III; Dkt. 38 Plaintiff's Facts ¶ 21). There is no record that Defendant filed a proof of claim in Debtor's bankruptcy.

After the petition was filed, Defendant accounted for the pre-petition debt in the ordinary course, and applied Debtor's post-petition payments to the pre-petition debt. Debtor specifically notified Defendant that Defendant was accounting for and collecting the pre-petition debt on at least three occasions through a series of letters dated in March and September 2004, and June 2005. (the "Letters") (Dkt. 38 Plaintiff's Facts ¶¶ 22, 23, & 25; Exhibit at 000023-25). Defendant admits having received the Letters. (Dkt. 44 Defendant's Facts ¶¶ 22, 23 & 25, Exh. I). The Letters indicated that payment for the post-petition fees was enclosed, and that the outstanding balance was not paid because it represented the pre-petition debt scheduled in bankruptcy. The Letters dated March 19, 2004 and June 25, 2005, included a copy of Debtor's petition. (Dkt. 44 Defendant's Facts ¶¶ 22, 23, 25, 43; Exh. I; Dkt. 38 Plaintiff's Facts, Exhibit at 000014-18). Mr. Pagan admitted having seen the Letters at around the time when the collection complaint was filed. (Dkt. 38 Plaintiff's Facts, Exhibit at 000018). At all times relevant to this action, Defendant's account ledgers reflected the pre-petition debt as currently due. (Dkt. 44 Defendant's Facts, Exh. III-V). Defendant admits that it did not separately account for the pre-

---

[6] See Case No. 03-12452-ESL at Dkt. 1, Schedule D. Despite being listed as a creditor, Defendant did not file a proof of claim.

petition debt and that it applied Debtor's post-petition payments to his pre-petition debt. (Dkt. 44 Defendant's Facts ¶¶ 3-4, 31, 56). Defendant's management company, AMMC, uses the "peachtree" accounting software in its computerized accounting system. (Dkt. 44 Defendant's Facts ¶¶ 3, 31). The Defendant's accounting software can be programmed to separately account for Debtor's other obligations, such as special assessment fees or "derramas". (Dkt. 38 Plaintiff's Facts ¶ 56, Exhibit at 000054; admitted at Dkt. 44 Defendant's Facts ¶ 56).

On February 8, 2006, Defendant's attorney sent Debtor a collection letter demanding prompt payment of $1,002 dollars plus legal interests, and threatening legal action. The collection letter refers to post-petition arrears purportedly accumulated between February 2005 and February 2006 (excluding August 2005, no explanation is given). (Dkt. 44 Defendant's Facts ¶ 3, Exh. II; Dkt. 15 Defendant's Facts ¶ 9, Exh. V). On or about April 12, 2006, Defendant filed a complaint for collection of money against Plaintiff before the General Court of Justice of the Commonwealth of Puerto Rico, First Instance, Guaynabo Part. (alternatively referred to as the "collection complaint" or the "collection action") Defendant's complaint sought the payment of $1,207.35 for arrears up to April 2006, plus legal interests and fees. (Dkt. 15 Defendant's Facts ¶¶10-11; Dkt. 44 Defendant's Facts ¶ 37, Exh. VII).[7] The amounts owed as provided in the collection letter and complaint, included the pre-petition debt, plus post-petition arrears. (Dkt. 38 Plaintiff's Facts ¶¶ 9, 11, 36-39, Exhibit at 000055-56; admitted at Dkt. 44 Defendant's Facts ¶¶ 3-4, 36-39).

According to Defendant's account ledger for Debtor, on February 1, 2005, Debtor had a total debt of $584 dollars. By April 2006, the date of the collection action, Debtor's total debt

---

[7] The Dkt. 15 Motion, ¶ 11, erroneously states that the initial demand in the collection complaint was for $1,720. However, the collection complaint demanded payment of $1,207 in maintenance fees, and $1,720 was the total debt owed by Debtor as of September 2006, when Defendant moved for default judgment. (Dkt. 15 Defendants Facts, Exh. VI, XI, XIV at 3-4; Dkt 44 Defendant's Facts, Exh. V).

was $1,207 dollars. Debtor was obligated to pay monthly maintenance fees at the rate of $102.55 per month. Between February 2005 and April 2006, the time relevant to the collection action, Defendant received approximately $812 dollars in post-petition maintenance payments from Debtor. (Dkt. 44 Defendant's Facts ¶ 5, Exh. V).

On or about July 31, 2006, Debtor's lawyer faxed a letter to Defendant's attorney in the collection action to notify Defendant's attorney of Debtor's bankruptcy proceeding and included a copy of the Notice of Stay issued by this court. In that communication, Debtors's lawyer also threatened to seek relief in bankruptcy court if Defendant did not drop the collection action. (Dkt. 38 Plaintiff's Facts ¶ 44, Exhibit at 000031-32). Defendant admits that its attorney received the July 31, 2006 letter from Debtor's attorney and the copy of the Notice of Stay. (Dkt. 44 Defendant's Facts ¶ 44; Dkt. 15 Defendant's Facts ¶ 13, Exh. VIII). On August 23, 2006, Defendant's attorney served Debtor's attorney with a copy of Defendant's complaint and notice of hearing in the collection action. (Dkt. 38 Plaintiff's Facts ¶¶ 45; Exhibit at 000033; admitted at Dkt. 44 Defendant's Facts ¶ 45). This communication threatened to seek an order of default judgment if Debtor did not appear at the collection action hearing scheduled for September 25, 2006. (Dkt. 38 Plaintiff's Facts, Exhibit at 000033).

By September 2006, Debtor's total arrears had increased to $1,720 dollars. (Dkt. 44 Defendant's Facts, Exh. XIV; XV at 3-4; Exh. V). On September 21, 2006, Debtor sent a letter to Defendant reminding Defendant that Debtor was in bankruptcy. This letter included payment of $1,025.50 dollars corresponding to post-petition arrears. Based on Debtor's calculations, he excluded from payment approximately $695 dollars representing the pre-petition debt. The next day, September 22, 2006, Debtor's attorney faxed a letter to Defendant's counsel to inform him of the payment, and sent him copies of the letter and check sent to Defendant and copies of

petition papers. (Dkt. 38 Plaintiff's Facts ¶¶ 46-47, Exhibit at 000034-43). Defendant admitted receiving these communications in September 2006. (Dkt. 44 Defendant's Facts ¶¶ 46-47; Dkt. 15 Defendant's Facts ¶ 14, Exh. IX & X). On or about September 25, 2006, Defendant moved for default judgment against Debtor in the collection action. In October 2006, Defendant's lawyer filed a form of order of default and obtained an order of default judgment against Debtor for $872 dollars, as follows: $695 in maintenance fee arrears, $167 in statutory penalties allowed by law, and $10 in legal interests. Plus an additional award of $500 in legal costs and expenses. (Dkt 44 Defendant's Facts ¶¶ 52-53, Exh. VIII, XIV & XV; Dkt. 15 Defendant's Facts ¶¶ 15-17, Exh. XI, XIII-XIV). The default judgement against Debtor has not been vacated. (Dkt. 50 Plaintiff's Reply at 5).

### *The parties' motions for summary judgment*

The background to Debtor's complaint and Cross-Motion is that Debtor sent Defendant three Letters between March 2004 through June 2005, giving written notice of his bankruptcy, prior to Defendant's filing of the collection complaint. (Dkt. 38 Plaintiff's Facts ¶¶ 22, 23, 25). The Letters also advised Defendant that its account statements improperly included the pre-petition debt. According to Debtor, the Defendant can program its accounting software to distinguish between operating accounts and special accounts. (Dkt. 38 Plaintiff's Facts ¶ 56; Exhibit at 000008; 54; Dkt. 50 Plaintiff's Reply at 3-4). Notwithstanding the Letters, on February 8, 2006, the Defendant mailed Debtor a collection letter demanding payment of $1,002 dollars for post-petition arrears plus $57 in legal interests allegedly accumulated since February 2005, and threatening legal action. (Dkt. 38 Plaintiff's Facts ¶ 33, Exhibit at 000026-27). In April 2006, the Defendant filed the collection action demanding payment of $1,207 in arrears up to April 2006, plus legal interests and costs. (Dkt. 38 Plaintiff's Facts ¶ 37, Exhibit at 000028-30).

According to Debtor, the amounts demanded were the result of applying his post-petition fee payments during the period in question to his pre-petition debt. As such, Debtor's actual post-petition debt was substantially less than the amounts demanded in the collection complaint. (Dkt. 1 ¶ 15). Defendants evidence and pleadings support Debtor's allegations. (Dkt. 44 Defendant's Facts ¶¶ 3-5, Exh. V).

The gravamen of Debtor's complaint and Cross-Motion is that in response to the collection action, Debtor sent written notice of the bankruptcy to Defendant and a copy of the Notice of Stay to Defendant's counsel in July and September of 2006; fully paid the post-petition debt in September 2006; and gave Defendant's attorney a fair warning that this action would ensue if they did not desist. (Dkt. 38 Plaintiff's Facts ¶¶ 44-47; Exhibit 000031-43). Debtor alleges that in response to these communications, and despite his warning and payment of the post-petition fees, Defendant obtained an order of default judgment in state court for the unpaid balance of the pre-petition debt, plus interests and an award of legal costs and expenses. (Dkt 1 ¶¶ 20-25; Dkt. 38 Plaintiff's Facts ¶¶ 52-53; Exhibit at 000044-51). As added proof of Defendant's willful violation of the stay, Debtor points out that, to this day, Defendant has not vacated the state court default judgment. (Dkt. 50 Plaintiff's Reply at 5).

The crux of the argument in Defendant's Motion is that everything alleged in the complaint flows from Defendant's lawful efforts to collect post-petition debt. According to Defendant, "[t]here is no evidence supporting Plaintiff's allegations of a collection of a pre-petition debt." (Dkt. 15 Motion at 7). Furthermore, Defendant argues that suing to enforce post-petition debt generally does not violate the stay. Defendant argues that it did not violate the stay because Defendant never sought to enforce the default judgment and Debtor voluntarily paid before judgment was entered in October 2006. (Dkt. 15 Motion at 8).

- 7 -

The Defendant changes its defensive posture in its Reply to Plaintiff's Cross-Motion. (Dkt. 44). Defendant's Reply presents a strategy of "confess and avoid". Defendant admits that it sued to collect the pre-petition debt, but argues that Defendant did not violate the stay because it only intended to enforce Debtor's post-petition debt. The Defendant's Reply puts forth a two-pronged defensive theory based on, 1) reasserting Defendant's subjective belief in the propriety of its legal actions (Dkt. 44 Defendant's Reply ¶¶ 19-21); and 2) asserting Defendant's lack of malicious or wrongful intent to violate the stay because it was relying and suing on "inadvertently" erroneous accounts. (Id. ¶¶ 20, 22, 29). Defendant makes the following contentions to bolster its defenses: a) that the literal terms of Defendant's collection letter and complaint only refer to post-petition debt accumulated since February 2005 (Id. at ¶ 20); b) that collecting post-petition debt is not prohibited by the automatic stay (Id. at ¶ 25); and c) that Defendant's "unintentional" acts do not reach the requisite level of willfulness required for a violation, especially considering the minimal $711 dollar amount in question and, therefore, Debtor cannot claim any damages. (Id. at ¶¶ 28-30).

The Defendant's defense of "inadvertent mistake" is premised on what Defendant depicts as an accounting error committed by its management company. The inadvertent accounting error was allegedly caused by the "peachtree" accounting software used by the management company, which was programmed to automatically apply post-petition payments to reduce the pre-petition debt. (Dkt. 44 Defendant's Facts ¶ 3; Defendant's Reply ¶ 21). This "involuntary clerical error" induced Defendant to believe at all times that it was collecting post-petition debt. Defendant admits that the collection letter demanded "an aggregate amount" that included the pre-petition debt, and that the collection action also included the pre-petition debt, but claims it was due to the alleged accounting error. (Dkt. 44 Defendant's Facts ¶¶ 3-7, 31, 38).

***Summary Judgment***

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; *see also, In re Colarusso*, 382 F.3d 51 (1ˢᵗ Cir. 2004), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10A Wright and Miller, *Federal Practice and Procedure* § 2712 (3d ed. 1998). "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." *Id.* Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. *Id.*

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 473 (1962); *Daury v. Smith*, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in

- 9 -

demonstrating its legal entitlement to summary judgment. *Adickes v. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also López v. Corporación Azucarera de Puerto Rico*, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. *Bias v. Advantage International, Inc.*, 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), *cert. denied*, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. *López*, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. *Celotex*, 477 U.S. at 325. *See also, Prokey v. Watkins*, 942 F.2d 67, 72 (1st Cir. 1991); *Daury*, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. *Kennedy v. Josepthal & Co., Inc.*, 814 F.2d 798, 804 (1st Cir. 1987). *See also Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169, 1172 (1st Cir. 1988); *Hahn*, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. *Over the Road Drivers, Inc. v. Transport Insurance Co.*, 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. *López*, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. *Adickes*, 398 U.S. at 159. The court must interpret the record in the light most favorable to the nonmoving party, reconciling all competing inferences in that party's favor.

- 10 -

However, "[n]either wishful thinking ... nor conclusory responses unsupported by evidence will serve to defeat a properly focused Rule 56 motion." *Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d 11 (1st Cir. 2007) *citing Griggs-Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir. 1990).

### *Discussion*

Debtor claims that Defendant's collection action was pursued with knowledge of the stay, willfully violated the stay provisions in § 362 of the Code, and caused him damages. The Defendant admits that it received notice of the petition and had knowledge of the stay. Defendant's Motion seeks to dismiss the complaint on the basis that none of Defendant's actions rise to the level of "willfulness" required to find a violation of the stay. Defendant claims that any acts constituting violations of the stay were committed "unintentionally" and without "punishable knowledge of wrongdoing", based on an "involuntary clerical error" committed by its management firm's accounting department. Due to this accounting error, Defendant admits it made efforts to collect the pre-petition debt because it was acting "under the belief" that it was only pursuing post-petition debt. (Dkt. 44 Defendant's Facts ¶¶ 3-7; Defendant's Reply ¶¶ 26, 29-30). Debtor countered by filing the Cross-Motion on the issue of liability for willful violation of the stay. According to Debtor, the defenses raised by Defendant are legally insufficient to avoid liability for damages for willful violation of the stay. We agree with Debtor.

### *The Automatic Stay*

Section 362(a)(1) of the Bankruptcy Code provides for a stay, applicable to all entities, of the commencement or the continuation of any proceeding against the Debtor that was or could have been commenced prior to the bankruptcy, or to recover a claim against the Debtor that arose pre-petition. Section 362(a)(6) prohibits "any act to collect, assess or recover a claim against the

- 11 -

debtor that arose before the commencement of the case under this title". Furthermore, "[t]he automatic stay provides a debtor with one of the fundamental protections under federal bankruptcy law–it gives Debtor's 'breathing room' from the pressures of their creditors." *In re Heghmann*, 316 B.R. 395, 404 (1st Cir. BAP 2004). In order to bring a claim for a section 362(h) violation, "the debtor has the burden of providing the creditor with actual notice [of the stay]. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay." *Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999). If notice of the automatic stay is given and a violation by a creditor is established, the debtor must prove by a preponderance of the evidence that he suffered damages as a result of the stay violation. *Heghmann,* 316 B.R. at 404-05.

***Willful Violation***

In a section 362(h) action, the debtor bears the burden of establishing the following elements by a preponderance of the evidence: 1) that the bankruptcy petition was filed; 2) that the debtor is an "individual" under the automatic stay provision; 3) that the creditors received notice of the petition; 4) that a violation occurred; 5) that the violation was committed willfully; and 6) that the debtor suffered damages. *See, In re Rijos ("Rijos I")*, 260 B.R. 330, 336 (Bkrtcy. D.P.R. 2001) (Order reversed and the case remanded for an evidentiary hearing on damages by, *In re Rijos ("Rijos II")*, 262 B.R. 382 (1st Cir. BAP 2001)). On the other hand, creditors bear the same burden to establish defenses such as immunities, lack of jurisdiction or inapplicability of the stay to their actions. *Rijos I,* 260 B.R. at 336.

In the First Circuit "a willful violation does not require a specific intent to violate the stay." *Rijos II,* 262 B.R. at 392 (citing *Kaneb*). Neither does it require a finding that the creditor acted with "malice aforethought". *In re McCormack*, 203 B.R. 521, 525-26 (Bkrtcy.D.N.H.

- 12 -

1996). The test for willfulness, as articulated by the First Circuit in *Kaneb*, is "namely knowledge of the automatic stay and an intent to do those acts that constitute a violation of the stay[.]" *In re Ocasio*, 272 B.R. 815, 824 (1st Cir. BAP 2002) (citing and quoting *Kaneb*). "In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." *Rijos II*, 262 B.R. at 392 (citing *Kaneb*); *Ocasio*, 272 B.R. at 824 (finding that the trial court was correct to presume the stay violation was deliberate once creditor's knowledge of the stay was established).

All of the elements for a stay violation set out in *Rijos I* are present in this case. The Debtor is an individual. Defendant admitted that it received notice of the petition and had knowledge of the stay when it committed the acts complained of and moved for default judgment in the collection action. (Dkt. 44 Defendant's Reply ¶¶ 19, 20, 29; Dkt. 38 Plaintiff's Facts ¶¶ 22, 23, 25, 44-47, admitted at Dkt. 44 Defendant's Facts ¶¶ 22, 23, 25, 44-47). Therefore, we must presume that Defendant's violations were deliberate. *Rijos II*, 262 B.R. at 392. We now review the record to see if Defendant has stated a valid defense to avoid the imposition of damages. *Rijos I*, 260 B.R. at 336. Absent any valid defenses to the violation, the only issue remaining before the court is the determination of Debtor's damages.

In this case, Defendant's defenses of mistake and inadvertence are similar to the defenses to violation raised by the defendant in *Kaneb*. In *Kaneb*, the debtor's chapter 13 case was converted to chapter 7 and debtor had already been discharged when he complained that a bank holding a pre-petition claim filed a foreclosure action over debtor's "exempt" Florida property while the stay was still in place. Apparently, the debtor had some equity in the property and claimed it for the estate. The defendant bank filed the foreclosure action erroneously believing that the case was over because there was an order of discharge in the debtor's file. The bank also

- 13 -

thought that the court had granted it relief from the stay, because there was an unsigned order for relief from the automatic stay in the debtor's file. 196 F.3d at 267. Once the debtor's attorney informed the bank's attorney of the violation, the bank put the case on hold, but did not dismiss it. Six weeks later and in response to a letter from debtor strenuously protesting the violation, the bank dismissed the action. *Id*. Nevertheless, the First Circuit found that putting the foreclosure case on hold and waiting six weeks to dismiss it after receiving notice of the stay and the violation, constituted a willful violation of the stay. The Circuit Court upheld the award for damages for emotional distress and attorney's fees granted by the bankruptcy court.

The defendant in *Kaneb* claimed that its actions "were an innocent mistake" because the bank thought and believed they could proceed with foreclosure, and denied any causal connection between the acts complained of and the damages claimed by the debtor. 196 F.3d at 268-69. In this case, the Defendant also raises its subjective belief and inadvertent error as defenses to liability, by alleging that it was proper to pursue what it thought was post-petition debt. However, the Defendant admitted receiving each of Debtor's notices of the bankruptcy, before and after filing the collection action. (Dkt. 44 Defendant's Facts ¶¶ 22, 23, 25, 44, 47, 51). The Defendant blames its accounting software for the mistake in suing for the pre-petition debt and claims that its administrator, Mr. Pagan, referred the case for collection to the attorney not knowing how the attorney would proceed. (Dkt. 44 Defendant's Facts ¶¶ 31, 42; Dkt. 44 Defendant's Reply ¶ 27). In another statement Defendant claims that Mr. Pagan did not have notice of the petition but admits that soon after filing the collection action, Mr. Pagan "explained [to Defendant's attorney] that there was a comment regarding a bankruptcy petition filed by Plaintiff". (Dkt. 44 Defendant's Facts ¶ 41). Additionally, Mr. Pagan admitted having seen the Letters at around the time when the collection action was filed. (Dkt. 38 Plaintiff's Facts, Exhibit

- 14 -

at 000018). Defendant does not claim that its attorney was unable to inquire whether there was pre-petition debt involved in the collection action. Instead, Defendant proceeded to collect the debt despite the Letters in Debtor's file indicating that he was in bankruptcy.

Similar to the situation in *Kaneb*, Defendant asserts that it is immune from liability because it thought its actions were lawful and was acting on inadvertently erroneous accounting data, by mistake, and without malicious intent. (Dkt. 44 Defendant's Reply ¶ ¶ 23, 26, 29-30). In that regard, Defendant claims that "plaintiff may recover damages when the defendant acted with actual knowledge that he was violating a federally protect right or with reckless disregard that he was doing so." (Dkt. 44 Defendant's Reply ¶ 30). Defendant misapprehends the standard applicable to finding a willful violation of the stay in the First Circuit. In *Kaneb*, the First Circuit specifically declined "to create a new [flagrant or reckless disregard] standard for willfulness." *Kaneb*, 196 F.3d at 268. The First Circuit held that a creditor is not "immune from sanctions because it made a mistake. A good faith belief in a right to the property is not relevant to a determination of whether the violation was willful. A willful violation does not require a specific intent to violate the automatic stay." *Id.* at 268-69. (citations omitted). In that regard, the Defendant's knowledge of the stay and its ongoing failure to dismiss the default judgment is critical to finding willfulness on its part. The standard "is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." *Id.* at 269.

Notwithstanding Defendant's claims of computer and clerical errors and its self-righteous allegations of mistaken belief and lawful intent, Debtor has a well-pleaded case of willful violation. The record makes it clear that Defendant acted willfully in pursuing the collection action with knowledge of the stay. In *Kaneb*, the creditor waited six weeks to dismiss the law suit once it received notice of the violation of the stay from the debtor. In this case, the Defendant

- 15 -

litigated the collection action through default judgment despite multiple notices from Debtor that Defendant was collecting the pre-petition debt. But unlike the defendant in *Kaneb*, the Defendant in this case has not dismissed its two-year-old collection action, a year after Debtor filed the instant proceeding. Consequently, Defendant's allegations of mistaken belief and inadvertent computer errors are insufficient as a matter of law to avoid liability for willfully violating the stay.

In fact, the Defendant's "peachtree" version of the "computer did it" defense has been rejected as a "non-starter" by a court in this circuit in a § 362(h) proceeding. *McCormack*, 203 B.R. at 524. In *McCormack*, a defendant bank blamed its accounting system for that defendant's repeated failure to reverse or credit in its books, the excess attorneys fees disallowed by the bankruptcy court and wipe the excess fees off of the account statements sent to the debtor in that case. The *McCormack* court held that such accounting practices violated the stay and awarded punitive and other damages to a debtor. The court held that a creditor who persists in sending account statements after having "clear knowledge of the bankruptcy" in an apparent effort to collect amounts no longer presently due except under the terms of a plan, and collect fees disallowed in bankruptcy, can be presumed to be acting with knowledge that the creditor "was violating federally protected rights, or at the very least acting with reckless disregard as to whether it was doing so." *Id.* (citations omitted).[8] Contrary to the facts in *McCormack*, in this case Mr. Pagan testified that they could program their accounting software to distinguish between certain accounts, such as those for operating accounts and those for special "derrama" fees owed

---

[8] The *McCormack* court rejected an argument similar to Defendant's argument that there cannot be liability for damages because Defendant did not seek to enforce the debt embodied in the default judgment. The issue must be viewed from Debtor's point of view, and Debtor had every right to believe that Defendant would enforce it. 203 B.R. at 525. This defense is inapt because it is undisputed that Defendant collected the pre-petition debt well before the collection action, and that the default judgment corresponds to pre-petition debt mentally accounted for by Debtor and, under the Horizontal Property Law of Puerto Rico, the obligation to pay arrears in maintenance fees becomes a lien over Debtor's apartment. (31 L.P.R.A. 1293(e)). Defendant's collection complaint prays for such lien to attach, and its By-laws provide for such a lien. (Dkt. 44 Defendant's Facts, Exh. VII at 2 (par. c); Exh. IX, By-Laws at 15, art. 67).

by Debtor. (Dkt. 50 Plaintiff's Reply at 4; Dkt. 38 Plaintiff's Facts ¶ 56, Exhibit at 000008; Dkt. 44 Defendant's Facts ¶ 56). Regardless of the "peachtree" software capabilities, once Debtor complained of the improper accounting, Defendant had to prevent the violation, even if it meant "getting a quill pen and ledger book to keep track of the effects of a chapter 13 [case] in progress if indeed it was beyond the powers of mortal men and women to re-program their computer." *McCormack* 203 B.R. at 524, fn. 2. Therefore, we find that Defendant's allegation that it acted induced by an inadvertent accounting mistake is not a proper defense to a claim for willful violation, and does not withstand scrutiny under the facts of this case.

The pleadings and exhibits suggest that after filing the petition, Debtor would pay the bulk of the post-petition fees that accumulated periodically, while mentally keeping track of the pre-petition debt and not paying that amount. (Dkt. 44 Defendant's Facts, Exh. III-V). However, section 362 does not impose a burden on debtors to keep a mental record of pre-petition debt, while creditors demand and collect the pre-petition debt with total disregard for the stay. The law is clear, once creditors have actual notice of the stay, they bear the burden to "prevent violations of the automatic stay." *Kaneb*, 196 F.3d at 269.

There being no valid defenses to the Debtor's allegations of stay violations, we now turn to the record to see "if the pleadings, depositions [...] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; *In re Colarusso, supra* 382 F.3d at 51.

The Defendant raises a point of law in the Motion in order to avoid liability. Defendant argues that "proceedings or claims arising post-petition are not subject to the automatic stay"... (Dkt 15 Motion at 4) citing *In re Gull Air, Inc.*, 890 F.2d 1255, 1263 (1st Cir. 1989). The Motion

goes on to explain that application of the "conduct theory" is required to determine whether a claim arises pre- or post-petition and, furthermore, that such post-petition claims are generally not subject to discharge and therefore, not subject to the stay. (Dkt. 15 Motion at 4) citing *In re Parker*, 313 F.3d 1267 (10th Cir. 2002). Defendant argues that only enforcement of the state court default judgment obtained against Debtor would trigger the provisions of the stay, if executed without prior authorization and approval from this court. (Id. at 4-5) (citations omitted). Defendant denies enforcing the default judgment at any time relevant to this action.

Defendant's argument regarding the inapplicability of the stay to post-petition claims, is correct. However, the same is legally unavailing, misplaced and irrelevant to the facts of this case. The conduct theory adopted by the Tenth Circuit in *Parker* "concerns [the] determination of the date on which a claim arose for purposes of classifying it as a pre- or post-petition claim." 313 F.3d at 1269. The date of a claim is determined by the date of the conduct giving rise to the claim. The conduct theory is different from the accrual theory, "which determines the date of a claim pursuant to the state law under which liability for the claim arose." *Id.*

The date when a claim arises is important in determining which debts are discharged and which debts are subject to the automatic stay provisions of section 362(a) of the Code. The automatic stay applies to claims against the debtor as of the commencement of the case. There is no question that the violation of the stay alleged by Debtor in this case is for a pre-petition claim, be it under the conduct or accrual theory.

The issue facing Defendant in this proceeding is to avoid liability given the facts constituting Defendant's multiple instances of willful violations of the stay regarding the pre-petition debt, to wit: sending invoices charging pre-petition debt; actually collecting pre-petition debt; failing to separately account for Debtor's pre-petition debt; sending a collection letter

- 18 -

demanding pre-petition debt and threatening legal action; filing and prosecuting the collection action to collect pre-petition debt, despite having notice of the stay; and, finally, Defendant's inexplicable failure to dismiss the default judgment in light of the instant action filed by Debtor. Consequently, Debtor's point of law regarding the inapplicability of the stay to post-petition claims is inapplicable in this case.

The Defendant also raises several factual disputes to avoid liability which are not "genuine" and do not concern any fact "material" to the issues under consideration. The Defendant focuses much attention on Debtor's allegation that interests were improperly charged as part of the collection action. (Dkt. 44 Defendant's Reply ¶¶ 21, 24-25, Exh. I, VII). The Defendant argues that charging interests is not a violation because these are allowed pursuant to Defendant's By-laws and were charged as part of the collection letter and complaint, but not as part of Debtor's maintenance fee account statement. However, Plaintiff only alleged that interests were charged by Defendant as part of the amount demanded in the collection action. (Dkt. 1 ¶¶ 14, 15). Thus, there is no dispute as to the place or account where the interests were computed, and any such dispute would be immaterial to the issue of Defendant's liability for violating the stay.

Defendant also implies that Debtor's reliance on the deposition testimony of Mr. Pagan is misplaced because Mr. Pagan is not the person in charge of the management firm's accounting. (Dkt 44 Defendant's Reply ¶ 22; Dkt. 44 Defendant's Facts ¶¶ 54-55, Exh. 17). This argument is a *non sequitur*. Debtor does not raise any dispute concerning the identity of Defendant's accountant. According to Mr. Pagan, the accountant works for AMMC and her name is "Brenda". She also worked for Caribbean Management, as did Mr. Pagan. Caribbean Management kept Defendant's books and accounts in much the same way as AMMC does and

- 19 -

turned them over to AMMC when the management changed. (Dkt. 38 Plaintiff's Facts, Exhibit at 000014; Dkt. 44 Defendant's Facts ¶ 55, Exh. 13 at 1). The record reveals that Debtor wrote Brenda at Caribbean Management in September 2004, and again wrote Caribbean Management in June 2005 to discuss his bankruptcy situation and the improper accounting that included his pre-petition debt. (Dkt. 38 Plaintiff's Facts ¶ 23, 25, Exh. I at 2-3; Dkt. 38 Plaintiff's Facts, Exhibit at 000024-25). Therefore, Debtor's reliance on Mr. Pagan's deposition testimony is not misplaced in view of Defendant's own admissions in the record, and any dispute as to the identity of Defendant's accountant would be immaterial to the inquiry at hand.[9]

The parties disagree on Debtor's fact allegation that Mr. Pagan "openly discussed" Debtor's bankruptcy with Defendant's attorney at around the time when the collection action was filed. (Dkt. 38 Plaintiff's Facts ¶¶ 42-43, Exhibit at 000016-18; 000023-25). The Defendant denies that Mr. Pagan "openly discussed" Debtor's bankruptcy with the attorney. (Dkt. 44 Defendant's Facts ¶¶ 41-42). As previously discussed, Defendant has admitted receiving notice of the petition before and after filing the collection complaint. (Dkt. 38 Plaintiff's Facts ¶¶ 22, 23, 25, 44, 46-47, 51; admitted at Dkt. 44 Defendant's Facts ¶¶ 22, 23, 25, 44, 46-47, 51, Exh. I; Dkt. 15 Motion ¶¶ 13-14, Exh. VIII, IX). It is undisputable that Defendant's attorney was put on notice of the stay on July 31, 2006, prior to moving for default.[10] Consequently, any discussion of the bankruptcy between Defendant and its attorney for purposes of filing or prosecuting the collection action would constitute an aggravating factor of the conduct at issue, but will not add to the main violation complained of by Debtor, which is Defendant's obstinate prosecution of the collection action with knowledge of the stay.

---

[9] In a printout of Debtor's account ledger dated November 10, 2004, it appears that someone, possibly Brenda, made a handwritten notation acknowledging Debtor's bankruptcy. (Dkt. 44 Defendant's Facts, Exh. IV).

[10] The Dkt. 15 Motion ¶ 13 reads June 31, 2006, but should read July 31, 2006, per Dkt. 15 Defendant's Facts, Exh. VIII.

- 20 -

Finally, Debtor claims that Defendant's attorney purposefully misinformed and deceived the state court into granting the default judgment against Debtor, notwithstanding the attorney's actual knowledge of the stay and that Debtor had paid the post-petition fees. (Dkt. 37 Cross-Motion at 13, 15-16; Dkt. 38 Plaintiff's Facts ¶ 52). The Defendant denies the fact "as alleged" but does little more than ignore the charge of deception. (Dkt. 44 Defendant's Facts ¶ 52). As previously discussed, the Defendant is bound by and is liable for the acts of its agents. Without question, the actions taken by Defendant's counsel in state court where "on behalf of Consejo." (Dkt. 15 Motion ¶ 8). The Defendant (Consejo) admits that its attorney "had knowledge of the bankruptcy petition" when Defendant and the attorney proceeded to collect the pre-petition debt and moved for default judgment, even though they "knew [that] the automatic stay" was in place. (Dkt. 44 Defendant's Reply ¶¶ 19-20, 29). It was then when Defendant's actions in violation of the stay reached the "willfulness" point of no return. Therefore, consideration of Debtor's allegations of deceit of a sister court in violation of the stay is best withheld for the damages phase of this proceeding.

***Summary***

Over the course of more than two years between March 2004 and September 2006, Debtor sent Defendant several notices of his bankruptcy proceeding and copies of the petition notifying the stay. Throughout this period, Debtor also notified Defendant that its accounting included the pre-petition debt. Actual notice of the bankruptcy and the stay notwithstanding, Defendant filed and prosecuted a collection action for Debtor's pre-petition debt. Defendant claims that it acted involuntarily and without wrongful intent to violate the stay, due to its own accounting error, but admits collecting and suing for the pre-petition debt. Construing the evidence and the allegations in the light most favorable to Defendant, nevertheless we must

- 21 -

conclude that it was within Defendant's exclusive power to correct the "erroneous" computerized accounting after receiving repeated notices from Debtor to that effect, starting in March 2004. The erroneous computerized accounting is depicted by Defendant as the foundation and trigger for the collection letter and complaint improperly filed against Debtor. Also, after filing the collection action, Defendant pursued the case all the way to default with clear knowledge of the bankruptcy. Defendant did so, despite payment of the post-petition debt and a fair warning from Debtor that he would file this action if Defendant did not relent. Such conduct constitutes a willful violation of the stay. To this day, Defendant maintains the propriety of its actions, despite facing this proceeding for damages for violating the stay. The least that can be said about this case is that Debtor gave Defendant repeated opportunities and ample time to investigate whether Defendant was violating Debtor's federally protected rights.

On the other hand, applying the same standards to Plaintiff's Cross-Motion, Plaintiff has established that the Defendant willfully violated the automatic stay by sending him account statements with pre-petition amounts, by applying Plaintiff's post-petition payments to his pre-petition debt, by sending him a coercive collection letter threatening Plaintiff to pay or face legal action, and by pursuing a collection action in a state court to the point of obtaining a default judgment against Plaintiff for the pre-petition debt, plus interests and an award of legal fees and expenses.

***Conclusion***

In view of the foregoing, Defendant's Motion for summary judgment is hereby denied. Plaintiff's Cross-Motion for partial summary judgment on the issue of Defendant's liability for willful violation the automatic stay, is hereby granted. Pursuant to section 362(h) of the Code and applicable case law, the case will be scheduled for an evidentiary hearing on the issue of

- 22 -

Plaintiff's damages.

SO ORDERED.

In San Juan, Puerto Rico, this 7th day of April 2008.

ENRIQUE S. LAMOUTTE
U. S. Bankruptcy Judge